[No. 2772-2. Division Two. August 14, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANCES SCOTT, *Appellant.*

114

*Lawrence W. Moore,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, A.C.J.—Frances Scott appeals her conviction of unlawful possession of heroin, a controlled substance. She contends a warrant to search for "employment and business records" at the premises where she allegedly was working was not broad enough in scope to allow the search of her purse, in which the heroin was found. We agree and reverse the conviction.

On June 30, 1976, Officer Duane Ottgen of the Tacoma Police Department obtained a warrant to search the premises of the European Sauna for "employment and business

records" for the purpose of discovering evidence of pimping, prostitution, and abduction. His complaint and affidavit stated that three different informants had reported on acts of prostitution and abduction at the European Sauna, that a "sauna" is required by state law to maintain records of employees and customers, and that such records would "reflect the placement and employment of prostitutes." Neither of them mentioned narcotics, nor do they seek or authorize permission to search any persons or specific personal effects at the sauna.

On July 6, 1976, Officer Ottgen, together with Deputy Sheriff Seewar and a deputy prosecutor, gained admittance to the European Sauna by posing as customers seeking a massage. They discovered that none of the three women found therein could produce licenses required of masseuses under Pierce County Code, chapter 50.10, and RCW 18.108.030. Officer Ottgen then read the warrant and began his search.

In the kitchen, Officer Ottgen located some slips of paper that he described as "business records"—notes with customers' addresses and telephone numbers, business licenses, and miscellaneous papers. He then saw some purses which, in his broad experience investigating sauna activities, he suspected of containing the names of customers, pay stubs, customer receipts, and the like. After determining who owned each purse, he searched them. In defendant's purse he found a balloon containing what was later determined to be heroin.

In the subsequent nonjury trial, Dr. Alan Eagleson appeared as an expert witness for the State. He testified that he analyzed the substance found in defendant's purse, established it as heroin, and threw away the remaining few milligrams of the substance not consumed during testing. Another alleged irregularity is that he testified he had not closed the balloon with tape at the conclusion of his analysis, whereas it was wrapped with tape when introduced at trial.

We first take up defendant's most telling argument and the basis for our reversal, *i.e.*, that the search exceeded the scope of the warrant.

The reason for obtaining the warrant, as stated on its face, and as articulated in testimony by the police, was to search for business and employment records that would evidence suspected prostitution and pimping activities.

■ A warrant to search certain premises does not, in itself, permit a search of persons found on the premises. *Tacoma v. Mundell,* 6 Wn. App. 673, 495 P.2d 682 (1972). In the case of *State v. White,* 13 Wn. App. 949, 538 P.2d 860 (1975), the police executed a warrant to search a premises for drugs. They searched the occupant's purse found on top of a bedroom dresser. This was upheld on the basis that the purse in its location atop the dresser was merely another household item within the scope of the warrant. *Accord, United States v. Johnson,* 475 F.2d 977 (D.C. Cir. 1973).

This search would fit neatly within the authority of *White* if the express purpose of the warrant had been to search for specified controlled substances. Moreover, in the process of a lawful search for particular evidence of criminal activity described in a warrant, the police may seize evidence of a separate crime inadvertently discovered in their plain view. This is the "plain view" exception to the rule declared in *Marron v. United States,* 275 U.S. 192, 196, 72 L. Ed. 231, 48 S. Ct. 74 (1927):

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*See State v. Dimmer,* 7 Wn. App. 31, 497 P.2d 613 (1972).

This case involves neither the seizure of evidence described in a search warrant nor the application of the plain view doctrine. The police affidavit sought a warrant only to search for the sauna's "employment and business

records." There is nothing in the affidavit expressing the theory propounded later in court, *i.e.,* that an employee's purse would probably contain "business records." We have no doubt the last thing the issuing magistrate had in mind was that he was being asked for, and therefore authorized, a search for business records in a woman's purse—the purse belonged to a woman who, as it turned out, had no masseuse license, and the proof of her employment by the sauna was somewhat equivocal. If Officer Ottgen had probable cause to believe that business records of the European Sauna could be found in the purses of women at the premises, it would have been easy enough for him to state and document that belief in his affidavit. That he did not do so, choosing instead to limit the application to "records of employees and customers" which the Pierce County Code requires to be kept as massage parlor business records, suggests to us that the police are attempting to bootstrap the search of the purse into the status of one legitimately and naturally expected *from the outset to yield* business records. In the absence of a showing of probable cause in the complaint, we cannot countenance that expectation.

In short, the warrant did not authorize the search of purses for employment and business records of the sauna, and a police search of the business *premises* for such records would not reasonably include the purses of women present, particularly the purse of a woman who was not clearly identified as an employee. This case is different from those which allow a search of purses found lying about in a residence being searched, because there is a reasonable expectation that a purse may be a repository for narcotics in a premises where there is probable cause to believe narcotics are present. A search of a purse is an invasion of privacy which we cannot condone as reasonable when the search is for business records which are not ordinarily found in purses. *See United States v. Johnson, supra* at 979. We hold that this warrant was treated by the police as a general warrant when they used it to search defendant's

purse, and the heroin should have been excluded from evidence. *Stanford v. Texas,* 379 U.S. 476, 13 L. Ed. 2d 431, 85 S. Ct. 506 (1965).

 The State suggests that the search may be upheld as a search incident to the arrest of defendant for working at the sauna without a license. In reviewing the testimony at trial and in the pretrial omnibus hearing, however, we find no evidence that defendant was ever actually arrested for such an offense.[1] In addition, the police did not explain the search of the purses on this ground, but solely on the ground they might contain business records. Finally, on this issue, defendant's purse was not on her person, nor within her immediate reach or control. *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969).

Defendant has made further assignments of error, all of which we find lacking in merit. Our reversal of the trial court's decision not to suppress the critical evidence in this case obviates the need for all but a brief discussion of these issues.

1. The scope of the warrant authorizing a search for "employment and business records" was not impermissibly broad. *See United States v. Thompson,* 495 F.2d 165 (D.C. Cir. 1974); *State v. Withers,* 8 Wn. App. 123, 504 P.2d 1151 (1972).

2. The officers did not misstep by using the ruse that they were employed in private occupations to gain entry to the premises. *See State v. Hartnell,* 15 Wn. App. 410, 550 P.2d 63 (1976).

3. Defendant does not argue that the substance found in her possession was not heroin, nor does there appear any doubt that Dr. Eagleson's analysis was correct. Therefore,

---

[1] We note that the complaint for search warrant appears defective due to its failure to establish the reliability of the informants involved. *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). This issue was not argued.

defendant was not prejudiced by his post–analysis destruction of the remainder of the evidence. *See State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976).

4. Finally, there was not such an accumulation of errors as to have deprived defendant of a fair trial. *See State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963).

For the reasons discussed above, however, the conviction is reversed.

PETRIE and CALLOW, JJ., concur.

Reconsideration denied September 7, 1978.

Review denied by Supreme Court January 19, 1979.